THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENJAMIN HANSEN, Plaintiff in Error.

*Opinion filed April 23, 1914.*

1. CRIMINAL LAW—*it is the province of the jury to determine the credibility of witnesses.* In a criminal case it is the province of the jury to weigh the evidence and determine the credibility of witnesses.

2. SAME—*when failure to prove corporate existence is not material.* Failure to prove the corporate existence of a railroad company whose money the defendants are charged with taking when they robbed the company's agent is not material, where the indictment also charges that they robbed the agent of certain valuable articles of his own and this charge is amply proven.

3. SAME—*when an instruction as to effect of possession of recently stolen property is properly given.* An instruction stating that the possession of stolen property, the proceeds of a robbery or burglary, soon after the commission of the offense is *prima facie* evidence of the guilt of the person in whose possession the property is found, is properly given on the trial of two persons jointly indicted and tried for the robbery, even though the stolen property was found in the possession of one, only, of such defendants.

4. SAME—*when instruction as to duty of police officer to testify is not improper.* Where police officers have testified in a robbery case it is not improper to give an instruction stating that when a police officer possesses information bearing upon the guilt or innocence of a person charged with crime it is his duty to appear and testify, if called, and such instruction does not assume as a fact that the officers did possess information as to the guilt of the accused.

5. SAME—*it is not error to refuse instruction giving a complicated definition of reasonable doubt.* The term "reasonable doubt" is so commonly understood that it requires no definition, and it is therefore not error to refuse an instruction giving a complicated definition of the term.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding.

HENRY E. MURPHY, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and D. E. DETRICH, (GEORGE P. RAMSEY, of counsel,) for the People.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Benjamin Hansen and Thomas Donovan were jointly indicted and tried in the criminal court of Cook county for the crime of robbery and were found guilty. Hansen has sued out this writ of error to review the judgment of the criminal court entered upon the verdict of the jury.

The first point sought to be made is, that the verdict of the jury was not sustained by the evidence. Plaintiff in error and Donovan were charged with having robbed George M. Niles, a ticket agent for the Chicago and Oak Park Elevated Railroad Company, at 11:30 P. M., July 10, 1913. Niles testified that on that night he was engaged at his work as agent for the elevated railroad at its Morgan street station, located at the intersection of Morgan and Lake streets, in the city of Chicago. He was in a booth, with his back to the track, facing a stile located outside the booth, through which the patrons of the road passed. The station was lighted by electric lights. Niles testified that at 11:30 P. M. plaintiff in error and Donovan came to the station, paid their fares and passed through the stile; that they stood a few moments in the waiting room, when one of the men opened a door leading to the platform, looked out, immediately stepped back, entered the booth and with a drawn revolver commanded Niles to hold up his hands; that while presenting the pistol to witness' breast Donovan reached

out and collected the coins lying upon the desk, and that plaintiff in error then came in, struck the witness a blow in the face and searched his pockets, taking from him two pocket-books, a pearl-handle knife, some keys and $2.85 in money,—all the property of the witness. The money taken from the counter or desk amounted to $2.35 and belonged to the railroad company. A train approached at this time, and plaintiff in error and Donovan, according to the testimony of Niles, backed out of the booth, leaped from the stile and ran down the steps from the station. Two police officers testified they were working together that night out of the Desplaines street station; that about 11:30 o'clock they were standing at the corner of Carpenter and Lake streets, about two hundred feet from the Morgan street elevated station, when they saw two men come out of an alley on the east side of Carpenter street and start south on that street. The men separated, and one, who afterwards proved to be plaintiff in error, went south on the east side of the street, and the other, who proved to be Donovan, went south on the west side of the street. The actions of the men attracted the attention of the officers, and they also separated, one following each of the men. At the intersection of Carpenter and Randolph streets the plaintiff in error and Donovan crossed to the south side of Randolph street and then went west to Curtis street and thence south on Curtis street to a saloon run by Ben Howell. Plaintiff in error went through the side entrance of this saloon and Donovan entered the front. The officers followed, and found plaintiff in error standing at the bar and Donovan was on a couch at the front end of the saloon. When the officers entered Donovan threw away a card-case, which one of the officers picked up. Plaintiff in error and Donovan were immediately placed under arrest and searched. Aside from the card-case, a knife, a one-dollar certificate and a quantity of small change were found in Donovan's pockets. That night Niles identified the knife, the card-case

and the contents of the card-case as his property. He also testified that a one-dollar certificate was among the money which had been taken from his pockets. The morning after the robbery Niles identified the plaintiff in error and Donovan as the persons who had robbed him, and he also identified them upon the trial.

As against this testimony plaintiff in error testified that on the evening of July 10 he met Mamie Schultz, a friend of his, at eight o'clock, at the corner of Curtis and Madison streets; that he went with her to the Virginia theater, where they remained until 10:30 P. M. and from there went to a restaurant on Madison street; that he had an appointment to meet a Mr. Thompson at Howell's saloon, who was to report to him whether he had secured a job for him; that he went with Miss Schultz to Howell's saloon, left her standing on the sidewalk and entered the saloon, where he met Donovan, whom he had not seen for two or three years. As Thompson was not present the plaintiff in error testified that he invited Donovan to have a drink with him, whereupon the officers entered and placed them both under arrest; that he had not left Miss Schultz more than five minutes when he was placed under arrest. Miss Schultz corroborated Hansen in every particular, and testified that when the officers brought plaintiff in error and Donovan out of the saloon she walked across the street and asked them what was the matter, and was informed that they had been placed under arrest. Both officers, who were acquainted with Miss Schultz, deny that she was present at that time.

Plaintiff in error attaches considerable importance to the fact that Niles, on his cross-examination, admitted that there was a bare possibility that he might be mistaken as to the identity of these men.

There is a direct conflict in the testimony. The testimony of Niles and the two police officers, if true, conclusively establishes the guilt of plaintiff in error. On the

other hand, his own testimony and that of Miss Schultz, if true, conclusively exonerates him. It is the province of the jury to weigh the evidence and determine the credibility of the witnesses. The question whether plaintiff in error is guilty of the crime charged depends entirely upon the credibility of the witnesses. The only manner in which the testimony of the witnesses for the People was impeached or contradicted was by the testimony of plaintiff in error and Mamie Schultz. We cannot say that the jury erred in believing the witnesses for the People and in disbelieving the testimony of plaintiff in error.

It is complained that the indictment charges in one count that plaintiff in error robbed Niles and took from him moneys belonging to the Chicago and Oak Park Elevated Railroad Company, a corporation, and in the other count that the money belonged to the receiver of the railroad company, and that this charge is not sustained by the evidence because of lack of proof of the corporate existence of the railroad company. The People contend that this proof was made when the actual exercise of corporate powers and functions on the part of the railroad company was shown. Whether the corporate existence of the elevated railroad company was sufficiently shown is unimportant, as the indictment also charged that plaintiff in error and Donovan robbed Niles of two pocket-books of the value of fifty cents each, one knife of the value of fifty cents, and of money, all the property of said Niles. This charge in the indictment was amply proven and is sufficient to sustain the verdict and the judgment thereon.

The court, on behalf of the People, gave the following instruction:

"The court instructs the jury that possession of stolen property, the proceeds of a robbery or burglary, soon after the commission of the offense, is *prima facie* evidence of the guilt of the person in whose possession such property is found."

It is insisted that it was error to give this instruction as to plaintiff in error. Plaintiff in error and Donovan were jointly indicted and tried. While there is no proof that any property of Niles was found in the possession of Hansen it was found in the possession of Donovan, and the instruction was properly given. So far as the possession of this property itself is concerned, this instruction cannot be said to be harmful to plaintiff in error as it does not apply to him except in so far as he was shown to have been associated with Donovan. This instruction did not tell the jury, as plaintiff in error contends, that the property of which the complaining witness claims he was robbed was found in the possession of plaintiff in error. The evidence warranted the giving of this instruction and it was properly given.

The People's sixth instruction given, dealt with the credibility which should be given to the testimony of a policeman or detective in the employ of a city. The only criticism made of this instruction is in reference to the statement contained therein that when a police officer possesses information bearing on the question of the guilt or innocence of a party on trial charged with a crime it is his duty to appear and testify, if called, and it is claimed that by this instruction the jury were told that the officers who testified in the case did possess information in reference to the guilt of the defendants and thereby assumed as a fact that which the jury must determine. The language referred to is not susceptible of that construction. It only dealt with the duty of a police officer to appear and testify when called, and contains no intimation whatever that the police officers who testified in this case were possessed of any information bearing upon the question of the guilt of plaintiff in error. This instruction is not subject to the sole criticism made.

Defendants' refused instruction No. 3 was properly refused, as it was covered by a number of instructions given.

263 — 4

Defendants' refused instruction No. 5 was a complicated definition of the meaning of the term "reasonable doubt." The instruction was properly refused. The meaning of this term is so commonly known and understood that it requires no definition.

Complaint is made of statements made by the State's attorney during his argument to the jury. We have examined the language complained of and find it unobjectionable. It consisted of legitimate argument based upon the evidence.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*